The Chancellor.
The complainant obtained a decree in this court for the sale of certain mortgaged premises, embraced in two mortgages, executed to him by two of the defendants, Dennis Brigham and his wife, and advertised the mortgaged premises for sale. Six of the defendants were made parties to the suit, in consequence of their holding a subsequent mortgage, which, with other property, embraced the same premises contained in the complainant’s mortgages. There were other defendants, who were judgment creditors of the mortgagor, Brigham. The defendants holding the third mortgage filed a hill in this court upon their mortgage prior to the complainant’s exhibiting his hill; hut they did not make the complainant a party to the suit, and it does not appear that when he filed his hill he had any notice of the existence of the suit which the said defendants had previously instituted. The complainant obtained a decree on his mortgages subsequent to a decree obtained by the defendants upon their hill. The account taken before the master included the amount due upon the three mortgages, and the decree of sale was to satisfy this amount. The defendants, by virtue of the decree which they had obtained on their bill, and the other defendants, by virtue *32 of their judgment at law against Brigham, advertised for sale, separate and distinct from and without naming the landed property, all the machinery, tools, implements, and fixtures on the mortgaged premises. The complainants filed a petition, alleging that, among the articles so- advertised to he sold, there were three hydraulic presses and pumps, a large quantity of steam and water pipes, two steam engines, two cylinder boilers and copper boilers, and prayed that the sale of these articles might be enjoined, on the ground that they were fixtures, and, as such, passed with the mortgaged premises under the complainant’s mortgages. An order was made, ex loarte, restraining the defendants from selling the articles named. A motion is now made to discharge that order, and the important question is presented, whether the articles enumerated are fixtures, and, as such, embraced in the complainant’s first mortgage.
Upon the argument of the motion, several preliminary questions of practice were started, which it is proper to settle.
On the part of the defendants, it was objected that the order to stay the sale was improperly granted on a petition, and that the proceedings should have been by bill, because the application was by a complainant in one suit, to enjoin a complainant in another, from executing a final decree of this court.
If the parties sought to be enjoined were not defendants in the suit in which the petition is presented, and* the question involved one which could not be settled without interfering with rights established in the other suit; or, in other words, if all the equities claimed by the petitioner were not embraced in the. suit in which the petition is presented and in which the defendants are parties, and could not be definitively settled irrespective of any order,' proceeding, decree, or equity, made or involved in the other suit, there might be some doubt as to the propriety of this mode of proceeding. But here is *33 a decree of the court which orders the sale of certain mortgaged premises to pay the amounts due the complainant and defendants upon their mortgages. A dispute has arisen between the complainant and defendants upon this decree, common to both of them, as to what that decree embraces. A petition presents fully the matter in difference between the parties, and the question can be adjusted more expeditiously and with less expense than in any other mode of proceeding. I do not see any technical objection to the proceedings, nor how the substantial rights of the parties can be prejudiced by it.
The defendants offered to read their answer to the petition. On its being objected to on the part of the complainant it was insisted to be right in this case, because the complainant had virtually obtained an injunction on his own petition in the nature of a bill, and that the defendants should have the same benefit, by answer, as if the proceedings had been by bill.
'Where a petition is presented, and an adverse party has a right to be heard in opposition, the usual proceeding is to grant a rule, or order, fixing a day for the hearing of the parties. Copies of the petition and rule are served on the opposite party. The parties are then at liberty to take affidavits, which must be either taken upon two days’ notice, or else copies served on the adverse party at least four days before the day of argument. The matters presented by the petition are heard upon these affidavits, and upon them only. The petition itself is no evidence of the facts stated in it. They must all be proved aliunde. No answer to the petition is required. Coxe v. Halsted and others, 1 Green’s Ch. R. 311; State Bank at Morris v. Bell, 3 Halst. Ch. R. 376.
Laying aside, however, both the petition and the answer, the facts of this case are all fairly disclosed by the affidavits; and the matter presented by the petition can be determined without the aid of any other evidence, with a duo regard to the rights of all parties. The only *34 question is, whether the three hydraulic presses, pumps, steam and water pipes, two steam engines and boilers, are fixtures to the real estate, and embraced in the complainant’s first mortgage ?
That all these articles are fastened to the realty, or, in other words, that they are fixtures, is placed beyond question by the evidence. Birt although they are fixtures, whether they may be separated from the real estate, and converted into, or be treated as personal by a person claiming adversely to the owner of the real estate, is a question to be determined by other considerations, the solution of which will in some measure depend upon the capacity in which the respective parties make their claim.
A trader erects trade fixtures attached to the freehold; as between landlord and tenant, they remain the property of, and may be removed by the latter during or at the expiration of his lease ; while, as a general rule, if erected by the owner in fee of the premises, the same fixtures will pass by grant to the grantee of the freehold. Exp. Cotton v. Nutter, 2 Mont. D. & D.; Montague, Deacon De Gex’s Rep. in Bankruptcy 725. A trader mortgaged the trade premises in fee, and then entered into partnership, and the firm carried on business on the same premises, and erected trade fixtures; it was held, on their bankruptcy, that the mortgagee was entitled to the trade fixtures. An equitable mortgage of leasehold property will carry all the fixtures, although erected for the purpose of trade, and therefore removable, as between landlord and tenant, and although they are not specified in the lease deposited or the memorandum of deposit. Exp. Broadwood v. McNeill, 1 Mont. D. & D. 631; and also Exp. Bentley v. West, 2 Mont. D. & D. 291.
The rule with regard to fixtures has been much relaxed, as between tenant for life or in tail and remainderman, and also as between landlord and tenant; but as between heir and executor, grantor and grantee, the rule has undergone no change.
*35 As between mortgagor and mortgagee, when we have once established the facts, that a thing appertains to the real estate, is necessary for its enjoyment, and is permanently attached to the freehold, its character as a fixture resulting to the benefit of the mortgagee is determined. As to the permanency, that does not depend so much upon the degree of physical force with which the thing is attached, as upon the motive and intention of the party in attaching it. If the article is attached for temporary use, with the intention of removing it, a mortgagee cannot interfere with its removal by the mortgagor. If it is placed there for the permanent improvement of the freehold he may. A. mortgages to B. a saw mill driven by water power. In a dry season, A. places in the mill a steam engine, as an adjunct to the water power, to supply the temporary deficiency of power. | The mortgagee cannot prevent the removal of the engine, and a judgment creditor of the mortgagor might take it under execution) But if A. takes out the water wheel, and, by means of a steam engine, converts the water mill into a steam mill, in that case the mortgagor would not be permitted to remove the engine, and it could not be taken by his creditors as personal property. Or, if a mortgagor makes a permanent improvement to a water mill by a steam engine, to increase the motive power of the mill, the engine becomes a permanent fixture. He makes the improvement for the benefit of the inheritance, which is his, and the improvement attaches to that inheritance. As between landlord and tenant, it would not, because the tenant made the improvement for the benefit of the term, and not of the reversion. This whole subject is very ably reasoned by Ch. Just. Shaw, in Winslow and others v. Merchants Ins. Co., 4 Met. 306, and many recent authorities are there reviewed. In that case the court decided that a steam engine and boilers, and all the engines and frames adapted to be moved and used by the steam engine, by means of connecting wheels, bands, or other gearing, as between mort *36 gagor and mortgagee, although put in the premises after the execution of the mortgage, are fixtures, or in the nature of fixtures, and constitute a part of the realty.
According to the evidence in the case before us, the articles enumerated were firmly attached to the freehold, and are essential to its full and beneficial enjoyment. They were placed there by the owner of the inheritance; and from their adaptation to the use and design of the real estate, the manner in which they were attached, and the length of time they have been used as fixtures, the legal inference is, that they were fixed to the freehold for the benefit of the inheritance, and not for any inferior purpose.
A witness who has worked for many years in the factory, who superintended the purchase of the large engine and boilers, and the putting them up, testifies that the engines were put up because they were found to be necessary, as the motive power, to the factories, the water power having been found insufficient and inadequate to the purposes of the factories, and were used constantly as the motive power, and constituted the principal power of the mills; and that if the engines and boilers were removed, it would be necessary to put new ones in their places to carry on the factories, and that they are indispensable; and that if the engines, boilers, pumps, presses, and pipes were removed from the factories, they would be very greatly diminished in value, and could not be used for the same purposes they have been used for many years past.
Another witness testifies as to the manner in which the articles are attached to the freehold. lie says, one of the boilers at the lower factory is at the dye-house, a stone building in the rear of the factory, and is so built in with the mason work, and connected with the wall of the dye-house, that it could not be removed without seriously injuring and disturbing the wall; this boiler is used for preparing dye-stuffs, and is not connected with the engines. The other three boilers at the lower factory are connected with the engines, and are in a building attached to that *37 factory. They are built in with brick and mason work about two feet high. The brick walls, with which they are built in, and upon which they rest, stand on stone foundations let down into the earth. They could not be removed without removing the brick walls, and one of them could not without seriously disturbing the foundation wall. The three boilers at the upper factory, and also the engine with which they are connected, are in a brick building, covered with slate, adjoining to and connected with the main factory. Three boilers are fastened and put in very much in the same manner as those at the lower factory: they are placed on, and built in with the brick work, so that they could not be removed without displacing such walls. The pipes running from these boilers to the engines in the mill, and carrying the steam thereto, pass through the stone foundation wall of the lower factory. The engine at the upper factory is what is called a stationary engine. It is put up in the manner such engines usually are, by being placed on a brick or stone foundation, let down into the earth about two feet and a half below the surface, and built up about two feet above the ground. It is securely fastened to the brick work by long iron rods or bolts put in while the wall is being built, which rods or bolts being firmly fastened at the bottom of the foundation wall, the wall itself is then built up around and enclosing them. The engine is fastened to these rods or bolts on this brick work by nuts and screws, so as to make it firm and strong.
It appears from this evidence, that from the manner in which these articles were attached to the freehold, no inference can be drawn that they were placed there for a temporary purpose or to answer a present expedient. In connection with this, the facts, that they were thus attached by the owners of the inheritance some ten years ago, and that the real estate was sold by the sheriff to Brigham, and that these articles passed with the sheriff’s deed without any other transfer or delivery, and that they *38 were upon the mortgaged premises when the mortgage was executed by Brigham to the complainant, and that there is nothing in the mortgage to show any intention to exclude them, prove, I think, that they were affixed for the permanent improvement of the inheritance, and, as fixtures, would pass with it by descent and by purchase.
The motion to discharge the order is refused, but without costs.